In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2696

GILBERT R. ARREOLA,

*Plaintiff-Appellant,*

*v.*

MOHAMMED CHOUDRY, M.D.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 2854—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 25, 2008—DECIDED JULY 14, 2008

Before BAUER, WOOD and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Gilbert Arreola brought this action under 42 U.S.C. § 1983, alleging that prison doctor Mohammed Choudry's treatment of his injured ankle constituted a deliberate indifference to a medical need in violation of the Eighth Amendment. Following a two-day trial, a jury found in favor of Dr. Choudry. Arreola moved for a new trial, arguing that conversations between his lawyer and various jury members after the verdict revealed that the foreperson was biased. The district court denied the motion. Arreola challenges the refusal to grant a new trial, arguing that his due process

rights were violated and the court misapplied the standard for evaluating juror bias set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).[1] For the following reasons, we affirm.

## I. BACKGROUND

In 2003, Arreola, a prisoner at Hill Correctional Center, injured his ankle during a soccer match and was taken to the prison infirmary for treatment. Dr. Choudry examined him and found no bone tenderness. Based on Arreola's symptoms, Dr. Choudry diagnosed him with a sprained ankle, ordered him back to his cell, and scheduled a follow-up visit in seven to ten days. Days later, Arreola was transferred to Cook County Jail, where another doctor took an x-ray of his ankle and determined that Arreola had a broken ankle. Arreola brought this suit, alleging that Dr. Choudry failed to conduct a proper examination of his ankle to determine the nature of the injury. The central issue at trial was whether Dr. Choudry's treatment of Arreola's ankle constituted deliberate indifference to Arreola's serious medical needs.

The jury *voir dire* process began with each prospective juror's completion of a written questionnaire. Question 19 asked: "Have you or any family member ever had a broken or severely sprained ankle, foot, or leg?" Juror Laterza, who was later elected foreperson, answered "no." Fourteen

[1] Arreola has filed a separate, unrelated interlocutory appeal challenging the Crutch Policy of Cook County Department of Corrections, No. 07-1700, which is currently pending before this court.

prospective jurors answered this question affirmatively, and Judge Kennelly conducted a series of follow-up questions to clarify the extent of the injuries and whether there had been any problems with the medical treatment.

Arreola challenged two jurors for cause, based on their personal experiences with ankle sprains suffered by family members. Judge Kennelly questioned them further by asking whether they would be able to put aside those experiences; both replied they could and Arreola withdrew his challenge to these jurors. Judge Kennelly seated twelve jurors, six of whom had answered affirmatively to the question involving ankle injuries.

The jury returned a verdict in favor of Dr. Choudry; later Judge Kennelly permitted both parties to speak to the jurors. Arreola's counsel filed a Motion for New Trial, supported by her own affidavit recounting her conversations with the jurors. The affidavit stated that Juror Laterza, who answered "no" to Question 19, told Arreola's counsel that she had once suffered a bad ankle sprain, and that based on this experience, she had no problem believing that Dr. Choudry could press on Arreola's ankle without finding tenderness. Counsel also stated that information she obtained from another juror during the post-trial interview indicated that the jury had given weight to Laterza's experience during deliberations.

Judge Kennelly made further inquiry and arranged for Laterza to be available by telephone. He requested that both parties submit questions to ask Laterza. Arreola's questions included: Did you see a doctor regarding your ankle sprain? Did you compare the actions taken by your doctor regarding your ankle sprain with the actions taken by Dr. Choudry regarding Arreola's ankle injury? Did you discuss this comparison with the other jurors? Did

you disclose your sprained ankle on your Juror Question-
naire form, and if not, why? Judge Kennelly rejected these
questions, particularly those involving juror delibera-
tions, commenting that the conversation would "be done
in a way that does not do anything that in the least bit
will deter any person from wanting to serve on a jury."

   Judge Kennelly placed the call to Laterza with both
parties' counsel and a court reporter present. He began the
conversation by asking Laterza whether she had told
Arreola's counsel after trial that she had suffered a
sprained ankle, and Laterza responded, "You know
what? I did." The following discussion then took place:

> Judge:    Was it a sprain that you regard as a severe
>           sprain?
>
> Laterza:  It hurt to walk. Oh, my gosh, yes, I did.
>
> Judge:    So when you answered "no" on that particu-
>           lar question—In other words, the question
>           didn't say whether you had a sprained ankle.
>           It said: Have you had a severely sprained
>           ankle? Would you have regarded it as a
>           severe sprain?
>
> Laterza:  Well, I still went on vacation. I mean, it
>           was—I mean, I still worked and I still went
>           on—I had plans. I went on a cruise, and I
>           went on the vacation. I mean, I did the tours
>           and everything.
>
> Judge:    How long after the sprain did you do that?
>
> Laterza:  Oh, immediately. It was like—I think I had to
>           work the next day and then I was leaving
>           that Saturday.

Judge:      So you didn't miss any work, in other words?

Laterza:    No.

Judge:      And then you went right on vacation within a day or two after?

Laterza:    Right.

Judge:      I mean, if I were to ask you today, have you ever had a—the wording is important here—have you ever had a severely sprained ankle, how would you answer that; yes or no?

Laterza:    Okay, but what degree now are you talking severe?

Judge:      Actually that is a really darned good question, and I guess the answer is—

Laterza:    It hurt.

Judge:      It would be a question of whether you regarded it as severe. So did you have—would you regard the sprained ankle you had as a severe sprain?

Laterza:    No.

Judge:      Okay. And when you answered the question on the questionnaire "no," were you trying to conceal or hide anything or anything like that?

Laterza:    No. You know what? I forgot about it.

Judge:      All right. But even now, you would not regard this—because of the way it was, you would not have regarded it as a severe sprain; is that a fair characterization?

> Laterza:   Well, severe being that, okay, it hurt—
>
> Judge:     Yes.
>
> Laterza:   —but I still functioned.
>
> Judge:     Okay. So, in other words, if I were to ask you right now, do you regard that as having been a sprain that you would characterize as a severe sprain, would you say it was severe or it wasn't severe?
>
> Laterza:   I would have to say no because I was able to walk.

Judge Kennelly ended the conversation, and subsequently denied the motion for new trial in a written order, concluding that, under *McDonough*, Laterza was not dishonest because (1) she had not recalled the injury at the time she filled out the questionnaire, and (2) Arreola failed to even prove that Laterza's answer was incorrect because she affirmed that she would not have regarded it as a severe sprain that would have called for an affirmative answer on the questionnaire.

## II. ANALYSIS

We review a decision to deny a motion for a new trial based on juror bias for an abuse of discretion. *Artis v. Hitachi Zosen Clearing Inc.*, 967 F.2d 1132, 1141 (7th Cir. 1992). "[T]here are 'compelling institutional considerations militating' in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias." *United States v. Medina*, 430 F.3d 869, 875 (7th Cir. 2005) (citation omitted); *United States v. Sanders*, 962 F.2d 660, 673 (7th Cir. 1992) ("The trial judge will always be in a better position than the appellate judges to assess

the probable reactions of jurors in a case over which he has presided.") (citation omitted). The Fifth and Sixth Amendments guarantee due process of law and trial by an impartial jury. *United States v. Brodnicki*, 516 F.3d 570, 574 (7th Cir. 2008). Trial courts have wide discretion in deciding a motion for a new trial. *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998).

Arreola first contends that he must be retried because the "truncated" juror bias hearing in Judge Kennelly's chambers violated his procedural due process rights. Arreola argues that as soon as Judge Kennelly determined that a hearing was necessary, he was entitled to a meaningful hearing. Specifically, he argues that Laterza was not sworn in, he did not have an opportunity to cross-examine Laterza or call witnesses, and thus, the proceeding failed to provide him with a meaningful opportunity to be heard.

Due process does not require a new trial every time jurors have been placed in a potentially compromising situation. *Rushen v. Spain*, 464 U.S. 114, 118, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *McClinton*, 135 F.3d at 1186. "[D]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Oswald v. Bertrand*, 374 F.3d 475, 478 (7th Cir. 2004) (quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). The nature of the hearing, in which all interested parties are permitted to participate, to some extent should include a determination by the trial judge of the circumstances, the impact of those circumstances on the jury, and whether or not the result of those circumstances prejudiced the verdict. *Smith*, 455 U.S. at 215, 102 S.Ct. 940.

Arreola's claims seek to expand present due process protections in situations involving post-verdict allegations of pre-existing juror bias. This Circuit has held that while due process may require some sort of hearing to determine whether extraneous contacts may have affected a jury's ability to be fair, the standard applies only to prejudicial extraneous contacts, and *not* to pre-existing juror bias. *McClinton*, 135 F.3d at 1186 (emphasis added); *Artis*, 967 F.2d at 1141. In the due process context, the tool for examining an intrinsic influence like juror bias is *voir dire*. *McClinton*, 135 F.3d at 1186. Other circuits have drawn similar distinctions. *See United States v. Connolly*, 341 F.3d 16, 34-35 (1st Cir. 2003) (holding that a juror's notes are an intrinsic influence on a jury's verdict, thus an evidentiary hearing is not required); *United States v. Sotelo*, 97 F.3d 782, 796 (5th Cir. 1996) (holding that trial courts are afforded broader discretion in dealing with intrinsic influences due to jury misconduct than it has afforded in cases of extrinsic influences); *United States v. Bassler*, 651 F.2d 600, 602 (8th Cir. 1981) (holding that a distinction may be drawn between extrinsic influences, such as publicity, consideration of matters not admitted into evidence, communications between a juror and an outside person, and intrinsic influences, such as a juror's notes, discussions or intimidation among jurors) (citing *United States v. Winters*, 434 F.Supp. 1181, 1186 (N.D. Ind. 1977), *aff'd* 582 F.2d 1152 (7th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 50 L.Ed.2d 332 (1978)).

Laterza's prior experience with an ankle injury constitutes an intrinsic influence that does not require an evidentiary hearing, let alone a new trial. *See Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir. 2005)

("[A] juror's personal experience does not constitute extraneous prejudicial information."); *Peterson v. Wilson*, 141 F.3d 573, 577-78 (5th Cir. 1998) (holding that juror discussion of personal past experience is not "extrinsic" evidence that requires a new trial). Moreover, jurors are expected to bring commonly known facts and their experiences to bear in arriving at their verdict. "We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system." *Shillcutt v. Gagnon*, 827 F.2d 1155, 1159 (7th Cir. 1987) (internal quotations omitted). Although jurors may not go beyond the record to develop their own evidence, they are entitled to evaluate the evidence presented at trial in light of their own experience. *United States v. O'Brien*, 14 F.3d 703, 708 (1st Cir. 1994) ("[I]n gauging witness credibility and choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense.").

We find Judge Kennelly conducted a post-verdict *voir dire* to investigate pre-existing juror bias that satisfied due process. He made the inquiry into the allegation of bias in a direct and conscientious manner, keeping in mind that the integrity of jury proceedings must not be jeopardized by unauthorized invasions. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Vitale*, 459 F.3d 190, 197 (2d Cir. 2006) (instructing that district courts should be reluctant "to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences."). Any further inquiry into Laterza's (or any other juror's) thought processes throughout jury

deliberations would have violated Fed. R. Evid. 606(b),[2] which severely restricts post-trial inquiry into a verdict. *United States v. Tanner*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *United States v. Briggs*, 291 F.3d 958, 963-64 (7th Cir. 2002) (holding that post-verdict allegations of juror intimidation during the deliberative process were not extraneous prejudicial information or an outside influence, thus under Rule 606(b) neither a hearing nor a new trial was warranted); *United States v. Muthana*, 60 F.3d 1217, 1223 (7th Cir. 1995) ("Juror testimony regarding the jury's deliberations is not admissible to impeach the verdict unless an extraneous influence was alleged to have affected the jury.").

Judge Kennelly properly treated the allegation as an "internal matter," thus keeping the integrity of the jury's deliberations intact. The post-trial interview, in which he determined that Laterza was honest and forthright about her response to Question 19, did not provide him

---

[2] Federal Rule of Evidence 606(b) states: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying."

with any reason to conduct further inquiry into the matter. *See United States v. Calbas*, 821 F.2d 887, 896 (2d Cir. 1987) (holding that the trial court "wisely refrained from allowing the inquiry to become an adversarial evidentiary hearing, so as to minimize intrusion on the jury's deliberations."). Judge Kennelly was under no obligation to ask the specific questions posed by Arreola during the post-verdict *voir dire* for potential bias, particularly when those questions (as Judge Kennelly noted) would violate Rule 606(b). *See id.* at 897 (holding that counsel's more active participation in the post-verdict *voir dire* was not necessary; it was enough that the court permitted counsel to submit proposed questions in advance); *see also United States v. Meader*, 118 F.3d 876, 878-81 (1st Cir. 1997) (holding that the court has no obligation to ask counsel's specific questions while conducting a post-verdict *voir dire* of a juror for potential bias).

Arreola also argues that he is entitled to a new trial because Laterza did not give an honest answer on the *voir dire* questionnaire, contending that Laterza heard other jurors relate previous ankle injuries during *voir dire*, but remained silent as to her injury. He also believes that Judge Kennelly misapplied the *McDonough* test because a correct response by Laterza to Question 19 would have provided a valid basis for a challenge for cause under *McDonough*. In order to obtain a new trial on this basis, a party must show "that a juror failed to answer honestly a material question on *voir dire*," and, if successful, then must demonstrate that "a correct response would have provided a valid basis for a challenge for cause." *Medina*, 430 F.3d at 875 (citing *McDonough*, 464 U.S. at 556, 104 S.Ct. 845). We review the district court's conclusion that Arreola failed to show that Laterza's answer to the *voir*

*dire* question was not honest for an abuse of discretion. *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989).

Throughout the pre-trial *voir dire*, other jurors related incidents in the past in which they or a family member injured an ankle. Presumably Laterza heard their answers, but this does not make her a dishonest person. Question 19, as it is worded, is partially subjective, in that it requires the juror to decide whether a previous ankle injury was a "severe" sprain, or simply a slight injury.[3] One woman's severe ankle injury could be another woman's tolerable ankle discomfort. Had she remembered her ankle injury during the pre-trial *voir dire*, Laterza still could have honestly answered "no" to Question 19 if, in her judgment, the sprain was not severe. While Laterza stated that the injury "hurt a lot," she was still able to go to work the next day and leave for vacation the following day. Judge Kennelly found that at the time she filled out the *voir dire* questionnaire, she did not recall the injury, but nonetheless affirmed that she would not have regarded it as a severe sprain that would have called for an affirmative answer to Question 19. To invalidate the result of Arreola's trial "because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 556, 104 S.Ct. 845. Judge Kennelly did not abuse his discretion in denying the motion for new trial.

Judge Kennelly declined to address the second prong of the *McDonough* test, as do we, because Laterza was not

---

[3] Judge Kennelly seemed to agree as to the subjective nature of a "severe" injury, noting during the post-trial *voir dire* that Laterza's inquiry about the degree of severity was "a really darned good question."

dishonest in her answers at *voir dire*. We note, however, that given there were six members of the seated jury that answered "yes" to Question 19, and Arreola withdrew his challenge for cause for two potential jurors with prior experiences with ankle injuries, after they assured the court they would be able to remain impartial, the court presumably would not have granted a challenge for cause if these facts about Laterza's injury came out during the pre-trial *voir dire*. *See Zerka v. Green*, 49 F.3d 1181, 1187 (6th Cir. 1995) (holding that, in an excessive force action, despite *voir dire* admissions by several jurors that they had relationships with police officers, plaintiff's counsel never challenged any of them for cause, thus failing to meet the second prong of the *McDonough* test).

### III. CONCLUSION

Arreola was afforded due process protection that he was entitled to and received a fair trial by an impartial jury. Accordingly the district court's denial of Arreola's motion for new trial is AFFIRMED.