In the

# United States Court of Appeals
### For the Seventh Circuit

No. 19-2574

DAVIN HACKETT,

*Plaintiff-Appellant,*

*v.*

CITY OF SOUTH BEND, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:17-cv-00278-RLM — **Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 15, 2020 — DECIDED APRIL 16, 2020

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Davin Hackett was a police officer for the City of South Bend. He asserts that the city discriminated and retaliated against him in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* The district court granted summary judgment in favor of the city. On appeal, Hackett raises a new hostile work environment claim. Because this new

argument was forfeited and Hackett fails to confront the grounds for the district court's decision, we affirm.

I.   *Facts and Procedural History*

Because we review a grant of summary judgment, we present the facts in the light most favorable to Hackett, the non-moving party, but we do not vouch for them. *Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018).

A.   *Facts*

Hackett was a patrolman in the South Bend Police Department from 2006 until his resignation in 2017. During this time, he also served as a military reservist with the Air National Guard and worked with aircraft weapons systems.

In 2014, the police department circulated a job posting for hazardous device technicians on its bomb squad. In addition to listing the duties and responsibilities the position entailed, the notice said that the positions were "probationary and contingent upon" training and certification through the Federal Bureau of Investigation's Hazardous Device School. Membership on the bomb squad did not constitute a promotion or immediately affect an officer's pay, but it could lead to additional work and specialty pay after the officer completed the certification process.

Hackett applied but was not among the three officers selected for the bomb squad positions. He testified that he had a candid discussion about the selection with the city's director of human resources. She told Hackett that he was the most qualified candidate but was not selected because of his pending seven-month deployment and future National Guard commitments.

Hackett then filed complaints with the Equal Employment Opportunity Commission and the United States Department of Labor alleging that he had been discriminated against on the basis of his military service. After the Department of Labor began investigating the claim, the city changed course and offered Hackett one of the bomb squad positions. When Hackett joined the bomb squad, however, two of the new members were informed that one would have to give up his position to make room for Hackett.

Even after he was assigned to the bomb squad, Hackett was never able to participate fully. At his first practice session, the bomb squad commander—Sergeant Cauffman—had Hackett sit at a desk while others participated in the training. Hackett tried to attend another session, but the other officers on the bomb squad drove away when they saw him. Hackett called Cauffman to confirm the time of the practice, but he received no response and left. And unlike other officers who started at the same time he did, Hackett did not receive an office key or materials explaining the process for attending the FBI's Hazardous Device School. Word had spread that Hackett was placed on the bomb squad because of his complaints. Other officers resented the fact that someone had to be removed to make room for him. One of the officers at risk of losing his spot on the bomb squad posted on Facebook that Hackett was a "Blue Falcon," which we are told is military slang for "buddy f****r."

Hackett felt that he was unfairly excluded from bomb squad training because he stood up for his rights against discrimination based on his military service. He voiced these concerns to the human resources department and the chief of police. When the human resources department began

investigating, Hackett's direct supervisor told him that he should not attend bomb squad practices while the investigation was pending. Soon thereafter, bomb squad practices were limited to certified technicians, meaning that Hackett would be unable to participate. Hackett never attended another bomb squad training.

In 2015, at roughly the same time as the bomb squad conflict, Hackett applied for a promotion to patrol sergeant. Hackett was deployed with the Air National Guard when applicants were scheduled to interview and submit samples of their "best work." The police department moved Hackett's interview to accommodate him. Because of his deployment, however, Hackett was unable to submit his work sample until several days after the interview. The police department ranked the applicants based on their interviews and work samples, but the ranking was done before Hackett's work sample was on file. Hackett was ranked sixth, and only the top three applicants would be recommended for promotion. But two of the candidates ranked above him were disqualified, and Hackett would have been among the top three remaining candidates if his late work sample score had been added to the initial score. Hackett, however, was not among the three candidates recommended to the chief of police for promotion.

B. *District Court Proceedings*

Hackett sued the city alleging unlawful discrimination on the basis of military status in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq*. He alleged that the city retaliated against him by excluding him from the bomb squad and discriminated

against him by failing to promote him to sergeant because of his military deployment.

The city moved for summary judgment. The district court granted summary judgment on the retaliation claim, concluding that the city's exclusion of Hackett from the bomb squad did not constitute a materially adverse employment action. Exclusion from the bomb squad did not cost Hackett pay, rank, or job duties, and the court found that the future benefits of membership on the squad were too speculative to support a claim. The district court also granted summary judgment on Hackett's failure-to-promote claim, concluding that no reasonable jury could find that the promotion process was tainted by any impermissible motive.

## II.  *Analysis*

We review *de novo* the district court's grant of summary judgment. *Gates v. Board of Educ.*, 916 F.3d 631, 635 (7th Cir. 2019). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a grant of summary judgment, "we construe all facts, and draw all reasonable inferences from those facts, in favor of the nonmoving party." *Gates*, 916 F.3d at 636, quoting *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005) (alterations omitted).

The refrains of summary judgment are familiar: "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018), quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

But this standard is easier to recite than to apply. In fact-intensive cases, credibility traps abound, and courts must be alert to avoid them. *Id.* at 894. We not only allow but *expect* jurors to draw on prior experience in drawing inferences from the facts. *Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008), citing *United States v. O'Brien*, 14 F.3d 703, 708 (1st Cir. 1994). We must consider generously the full range of possible inferences, and we affirm the district court only when no reasonable jury could have found for the plaintiffs. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A. *The Uniformed Services Employment and Reemployment Rights Act*

The Uniformed Services Employment and Reemployment Rights Act is the current version of a long line of federal statutes that have protected uniformed service members from employment discrimination. See *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009), citing the Veterans' Reemployment Rights Act of 1974; see also 20 C.F.R. § 1002.2 (tracing lineage of veterans' employment protection statutes back to Selective Training and Service Act of 1940). This case involves three distinct varieties of claims under the Act: (1) discrimination based on service obligation; (2) retaliation for invoking rights provided by the Act; and (3) hostile work environment based on protected status.

The Act's antidiscrimination provision provides in relevant part: "A person who … has an obligation to perform service in a uniformed service shall not be denied … any benefit of employment by an employer on the basis of that … obligation." 38 U.S.C. § 4311(a). A "benefit of employment" includes "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or

interest … that accrues by reason of an employment contract or agreement or an employer policy … ." § 4303(2). The employee bears the burden of proving that the employer's action was motivated at least in part by the employee's service or obligations, at which point the burden shifts to the employer to show that the action would have been taken anyway. § 4311(c)(1).

Like most employment discrimination statutes, the Act also expressly protects employees from retaliation from their employers for invoking the Act's protections: "an employer may not discriminate in employment or take any adverse employment action against any person because such person ... has taken an action to enforce a protection … or has exercised a right" provided by the Act. 38 U.S.C. § 4311(b). We have interpreted the term "adverse employment action" in parallel with that term's meaning in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. See *Crews*, 567 F.3d at 869. "Materially adverse actions include termination, demotion accompanied by a decrease in pay, or a material loss of benefits or responsibilities, but do not include 'everything that makes an employee unhappy.'" *Id.*, quoting *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008). In the context of retaliation claims, an employment action may be considered "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted) (applying Title VII retaliation provision), quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006), in turn quoting *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005). A plaintiff must also show that the retaliatory action was motivated at least in part by his or her invocation of rights and protections provided by

the Act, at which point the burden shifts to the employer to prove that it would have taken the adverse employment action anyway. 38 U.S.C. § 4311(c)(2).

We have not decided whether hostile work environment claims are cognizable under the Act, but we assume for the purpose of this appeal that they are. As described above, the Act states that a "benefit of employment" includes "the terms, conditions, or privileges of employment." *Id.* § 4303(2). This is the same language used in Title VII and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, that provides the textual basis for hostile work environment claims under those statutes. See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (hostile work environment claims cognizable under Title VII); *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (hostile work environment claims cognizable under ADA). Congress specifically added this language to the Act just months after the Fifth Circuit had held that hostile work environment claims were not cognizable precisely because the Act lacked this exact term. Compare Pub. L. No. 112-56, § 251, 125 Stat. 711, 729 (2011) (amending 38 U.S.C. § 4303(2)), with *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 178–79 (5th Cir. 2011).

A plaintiff bringing a hostile work environment claim must prove that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his protected status; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and created a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (Title VII), citing *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

B.  *Forfeiture of the Hostile Work Environment Claim*

The only claim Hackett raises in his appellate brief is one he did not raise in the district court. Hackett argues on appeal that he was subjected to a hostile work environment. But by failing to bring this argument before the district court, Hackett has forfeited it. *Gates*, 916 F.3d at 641. In his brief opposing summary judgment, Hackett asserted only two claims: (1) a retaliation claim based on his invocation of his rights under the Act and his effective exclusion from the bomb squad; and (2) a discrimination claim based on the failure of the city to promote him to sergeant.

The conduct underlying Hackett's newly raised hostile work environment claim is the same as that underlying his retaliation claim, but these are legally distinct theories with different elements. At summary judgment, though not necessarily in a complaint, a plaintiff needs to spell out these distinct theories separately, at least to the extent that the brief gives the district judge fair notice that the theory is being asserted. See *id.* (reversing summary judgment on Title VII hostile environment claim but holding that retaliation claim based on the hostile conduct was waived); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 719–20 (7th Cir. 2012) (affirming summary judgment; plaintiff presenting Title VII claim on pattern-or-practice theory could not pursue new disparate-impact theory on appeal). Because the hostile work environment claim was not raised in the district court, we will not consider it on appeal.

C.  *Forfeiture of Arguments for Reversing Summary Judgment*

Hackett's brief on appeal does not actually engage with the district court's stated reasons for granting summary

judgment on his retaliation and discrimination claims. A few headings make passing references to retaliation and the failure to promote. But Hackett does not tell us what constituted an "adverse employment action" or describe how the specific measures taken against him might rise to the level of adverse action. Hackett does not mention *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), or otherwise address the district court's reasoning that, in the absence of effects on pay, benefits, or immediate job prospects, Hackett could not show any materially adverse employment action.[1] Indeed, neither the word "retaliation" nor any variant of it appears in the body of the brief's argument section. Nor does Hackett address the causal relationship between his military service and the police department's decision not to promote him to sergeant. He does not tell us how a reasonable jury could conclude that the alleged scoring error was motivated at least in part by his military service, as he must to prevail. See *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 17 (1st Cir. 2007).

---

[1] The material-adversity standard articulated by the district court—focusing exclusively on rank, pay, and immediate job opportunities—may well have been too narrow as applied to retaliation claims. Recall that for retaliation claims, an employment action can be "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (quotation marks omitted) (applying Title VII retaliation provision). Determining whether an action has the power to persuade requires sensitivity to the particular circumstances of the employee. See *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005). And the Act's discrimination provision—which the retaliation serves to protect—covers service members regarding "benefits of employment," defined broadly to include any "advantage, profit, privilege, gain, status, account, or interest." 38 U.S.C. § 4303(2).

An appellant who does not address the rulings and reasoning of the district court forfeits any arguments he might have that those rulings were wrong. *Webster v. CDI Indiana, LLC*, 917 F.3d 574, 578 (7th Cir. 2019); *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018) ("[A]n appellate brief that does not even *try* to engage the reasons the appellant lost has no prospect of success."); see also *Ulrey v. Reichhart*, 941 F.3d 255, 260 (7th Cir. 2019). It is not enough for Hackett to tell us that he is "advancing the same arguments he made in the district court." Appellant's Br. at 16. For us to consider those arguments, he needed to present them, not just gesture at them.

In short, on appeal Hackett relies on an entirely new hostile environment theory, and on the claims he presented to the district court, he has failed to engage with the district court's reasoning, let alone shown there was any reversible error. The judgment of the district court is

AFFIRMED.