**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 21, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1620

| | |
|---|---|
| LARRY D. HARRIS, JR., | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 18-C-0234 |
| | |
| JEREMY WESTRA, et al., | Lynn Adelman, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Larry Harris, a Wisconsin prisoner who was disciplined after assaulting a corrections officer, challenges the constitutionality of his placement in administrative confinement. He asserts that his due-process rights were violated at his administrative-confinement hearings because Jeremy Westra, one member of the prison's placement committee, harbored bias against him. *See* 42 U.S.C. § 1983. Harris also says that the prison's warden implemented policies at the prison that resulted in constitutionally

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

deficient review of administrative-confinement placements. The district court found no evidence of bias against Harris during his placement proceedings and entered summary judgment for the officer and warden. We affirm.

The facts are disputed; we present them in the light most favorable to Harris, the non-moving party. *See Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). Before his transfer to Waupun Correctional Institution, where he is now incarcerated, Harris attacked a corrections officer at Columbia Correctional Institution, inflicting serious injuries that required the officer's hospitalization. The attack was captured on video surveillance. Columbia prison staff completed a conduct report afterward and forwarded it to Waupun for a disciplinary hearing.

That hearing took place before Westra, a captain at Waupun who had no prior knowledge of the attack at Columbia. Harris presented no defense beyond stating that he was not guilty (presumably to avoid having anything he said at the hearing be used against him at a pending criminal trial). Westra reviewed the conduct report, Harris's disciplinary history, the video of the attack, and photos of the officer's injuries. According to Harris, Westra remarked upon reviewing the photos, "I hope you get off"— which Harris construed as Westra's view that Harris received sexual gratification from seeing the injuries he had inflicted. Westra found Harris guilty of assaulting a correctional employee in violation of DOC § 303.13(1) of the Wisconsin Administrative Code and imposed 360 days of disciplinary separation. *See id.* DOC § 303.72. Westra observed that Harris expressed no remorse at the hearing and justified the punishment as necessary to protect staff and inmates and to deter Harris from future violence.

When Harris's disciplinary separation ended, Kyle Tritt, the officer in charge of the restrictive-housing unit, wanted him placed in administrative confinement based on the risk of harm that he presented to other inmates. *See id.* DOC § 308.04. On a placement-recommendation form, Tritt noted that Harris had received 67 conduct reports since being admitted to prison, including several for fighting with inmates and disobeying staff. Given Harris's convictions for murder and attempted murder, Tritt continued, there was an "assaultive nexus" between those offenses and his misconduct in prison. Tritt attached five conduct reports, including the one Westra had adjudicated.

The warden then assigned Westra and two other officers to constitute the Administrative Confinement Review Committee that presided over Harris's hearing a few days later. On the advice of a staff advocate, who assured him that the incident at Columbia would not be considered by the committee, Harris again said nothing at the hearing. The committee unanimously decided that administrative confinement was

justified by Harris's "very assaultive history" and indifference toward his victims. In a written disposition, the committee stated that it relied on four conduct reports Tritt had submitted; it did not mention the Columbia conduct report. Harris believed that the omission was intentional and reflected the committee's acknowledgment that Westra should not have participated in the hearing based on his familiarity with Harris. He appealed the committee's decision and lost.

Six months later, Harris's placement came up for review, and the warden again selected Westra to be part of the placement review committee. Harris refused to attend the hearing, and the committee decided to extend his placement in administrative confinement based on his violent behavior, disrespect for authority figures, and lack of "interest in receiving help to work towards a general population move." Harris appealed that decision too, with no success.

Harris then sued Westra and the warden. (He also sued the other five hearing officers and two prison administrators, but the district court dismissed his claims against those defendants before summary judgment, and Harris does not appeal those dismissals.) He asserted that he was denied due process at his administrative-confinement hearings because Westra—having already adjudicated his conduct report from Columbia—could not be an impartial decisionmaker. And the warden, he said, had sanctioned procedures at the prison that resulted in constitutionally deficient administrative-confinement hearings. He sought damages from both defendants and several forms of injunctive relief.

The district court screened the complaint, *see* 28 U.S.C. § 1915A, and allowed Harris to proceed on a claim against Westra for violating his due-process rights and a *Monell* claim against the warden for allowing an unconstitutional policy or practice. In a later order, the court clarified that it was allowing Harris to proceed against the warden only for purposes of injunctive relief.

Westra and the warden eventually moved for summary judgment, and the court granted their motion. Regarding Harris's due-process claim against Westra, the court concluded that nothing suggested that bias had infected the two administrative-confinement hearings. Westra may have known more about Harris's circumstances and character than his two fellow committee members, the court acknowledged, but nothing suggested that his involvement with the conduct report from Columbia was more than tangential. Further, though the parties disputed whether the committee's omission of Westra's conduct report from its first written disposition was intentional, that dispute

was not material. Having disposed of the claim against Westra, the court dismissed the claim for injunctive relief against the warden.

On appeal, Harris contends that the court overlooked two examples of material evidence that Westra harbored bias against him, having adjudicated his initial disciplinary proceeding. First, he points to circumstantial evidence—the committee's failure to mention the conduct report for the incident at Columbia. Harris believes that the omission was intentional and shows that the committee implicitly recognized that Westra's involvement in the disciplinary proceedings had the potential for bias.

But proving bias is a high bar, *see Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003), and the district court correctly concluded that Harris's evidence was insufficient to create a fact question. Adjudicators are entitled to a presumption of honesty and are "not deemed biased simply because they presided over a prisoner's previous disciplinary proceedings." *Id.* To survive summary judgment, Harris had to provide evidence showing that Westra was "directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof." *Id.* at 667. He has not met this burden. It is undisputed that Westra had no knowledge of Harris's conduct at Columbia before adjudicating the conduct report, and that the two men had no further interactions in the time leading up to Harris's administrative-confinement hearing. As we explained in *Piggie,* it is not enough to show that a member of an adjudicative body sat on an earlier board that considered whether the prisoner had violated prison rules, even if those proceedings ended in a guilty finding. *Id.* at 666.

Second, Harris faults the district court for not acknowledging Westra's comment that he hoped Harris "got off" on the photographs of the officer he battered. Harris argues that the comments show that Westra formed opinions about his disposition and attitude during the disciplinary proceedings. These early impressions, he says, colored Westra's later participation in adjudications over his confinement.

But prison officials are not subject to disqualification from disciplinary committees simply because they formed opinions of a prisoner during prior disciplinary proceedings. *Liteky v. United States,* 510 U.S. 540, 551 (1994); *Pannell v. McBride,* 306 F.3d 499, 502 (7th Cir. 2002). In court proceedings, for instance, it has long been regarded as "normal and proper" for a judge to sit in successive trials involving the same defendant, even though prior proceedings may have predisposed that judge against the defendant. *See Liteky,* 510 U.S. at 550–51. And the requirements of due process are considerably more relaxed in the setting of prison discipline. *See Eads v. Hanks,* 280 F.3d 728, 729 (7th Cir. 2002). Though members of prison disciplinary

committees may not adjudicate conduct that they witnessed, *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995), Westra had no interaction with Harris outside the disciplinary and administrative-confinement hearings. The district court's decision to grant summary judgment to Westra thus was proper.

Finally, to the extent that Harris attempts on appeal to revive his *Monell* claim against the warden for sanctioning a policy that created constitutionally deficient administrative-confinement hearings, the district court correctly dismissed that claim. By suing the warden only in his official capacity, Harris made the state an interested party—and a state is not a "person" subject to damages under § 1983. *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). In any event, the record is devoid of evidence suggesting that any unconstitutional policy or practice existed at the prison. The district court properly recognized that, once it had dismissed Harris's claims against Westra, he had no remaining claim for which injunctive relief could be granted.

We have considered Harris's remaining arguments, and none has merit.

AFFIRMED