NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 17, 2022*
Decided June 21, 2022

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-3175

| | |
|---|---|
| ROBERT TURBEN,<br>*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Northern District of Indiana,<br>South Bend Division. |
| *v.* | No. 3:19-CV-141-JD |
| NANCY MARTHAKIS,<br>*Defendant-Appellee.* | Jon E. DeGuilio,<br>*Chief Judge.* |

## O R D E R

Robert Turben, an Indiana inmate, appeals the entry of summary judgment on his deliberate-indifference claims against a prison physician, Dr. Nancy Marthakis, for her treatment of his foot pain and diabetes. The district court concluded that no reasonable jury could find that Dr. Marthakis was deliberately indifferent to Turben's medical needs. We affirm.

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We present the facts in the light most favorable to Turben, the nonmoving party. *See Hackett v. City of South Bend*, 956 F.3d 504, 506 (7th Cir. 2020). Turben first saw Dr. Marthakis in January 2018 while he was incarcerated at the Indiana State Prison. (He is now housed at the Plainfield Correctional Facility.) At that time, he complained of ongoing pain in his right foot. Dr. Marthakis ordered an x-ray, which revealed osteopenia (the loss of bone mass) but no acute fracture or dislocation, and she prescribed an increased dose of nerve-pain medication. At the same appointment, she also recommended that Turben use a wheelchair, but he declined and chose to continue to use crutches.

Dr. Marthakis continued to monitor and treat Turben's foot pain. In February, after a nurse observed that Turben was pocketing rather than taking his nerve-pain medication, Dr. Marthakis prescribed a different medication that had less potential for misuse. But Turben balked at taking it because of side effects that he regarded as severe. The following month Dr. Marthakis assessed Turben's foot and recommended that he use a wheelchair or walker, but he refused because he did not want his mobility restricted. Several months later, Dr. Marthakis evaluated Turben's foot several more times, even ordering an additional x-ray that showed mild degenerative change but no acute fracture or dislocation. She also offered him pain medication (which he sometimes refused because of his concern about side effects); ordered custom orthopedic shoes for him; and referred him for physical therapy, which he briefly attended. In early 2019, Dr. Marthakis declined Turben's request to see a podiatrist. She explained that she did not deem a referral justified based on Turben's x-rays and his continued refusal to follow medical guidance for treating his symptoms. She instead offered him a walker and pain medication, both of which he declined.

During this same period, Dr. Marthakis treated Turben for diabetes, which he managed with a 70/30 insulin regimen (a mixture of 70% intermediate-acting and 30% fast-acting insulin). In May 2018, Dr. Marthakis—over Turben's objections—changed his brand of insulin from Humulin 70/30 to Novolin 70/30; Turben said he preferred Humulin because of a past experience with Novolin that made him sick. Dr. Marthakis stated in an affidavit that she thought that Turben's glucose-level irregularities stemmed from noncompliance with his insulin regime and diet. His medical records reflect that in June 2018, he once had refused both his insulin shot and his diabetic meal option (which he regarded as too bland).

In early July, Turben was twice hospitalized for diabetes-related issues. He was first hospitalized on July 9, when he showed up at the nurse's station for a glucose-level check appearing winded, his color off, and having a distant look in his eyes. His medical records reflected that he had missed at least three insulin shots in the preceding week. (Turben asserts that he missed some of these visits because he was vomiting and dehydrated.) At the hospital, Turben was diagnosed with ketoacidosis (dangerously high blood acids because of a lack of insulin) and treated with IV fluids and a drip of Humalog 75/25 insulin (which had a slightly different ratio of intermediate-to-fast-acting insulin than his current regimen). Upon his return from the hospital, Dr. Marthakis placed an order to resume his Humulin 70/30 insulin.

Three days later, on July 12, Turben was hospitalized for another diabetic episode. That afternoon, after receiving a call reporting that Turben was not feeling well, a nurse assessed him in his cell and saw that he was vomiting and unable to eat or drink. Upon being informed of Turben's condition, Dr. Marthakis instructed the nurse to place him on IV fluids and perform a urine test; if ketones (blood acids that could indicate dangerously low insulin levels) were present in his urine, Turben was to be sent to the emergency room immediately. The urine sample indeed tested positive for ketones, and the nurse promptly ordered an ambulance. The nurse then updated Dr. Marthakis on Turben's condition, and she instructed the nurse to run more tests and place Turben on an insulin drip before taking him to the emergency room. The nurse did as told and cancelled the ambulance. About an hour later, Turben went into respiratory distress. Another nurse made an emergency call to summon more medical staff and custody staff. Turben was rushed to the nurse's station. A few minutes later, Dr. Marthakis was notified of Turben's condition and she directed the nurses to rush him to the emergency room. At the hospital, Turben was stabilized, and he returned to the prison later that day.

Turben then sued Dr. Marthakis under 42 U.S.C. § 1983 for deliberate indifference. As relevant to this appeal, he argued that she inadequately treated his foot pain by misdiagnosing his condition and refusing to refer him to a podiatrist. He also argued that she inappropriately treated his diabetes (1) by changing his insulin from Humalog 75/25 back to Humulin 70/30 after his July 9 hospital visit—a modification that, he asserts, made him sick enough to require a second hospitalization—and (2) by instructing his nurse to cancel the ambulance when he fell ill on July 12.

The district court entered summary judgment for Dr. Marthakis, concluding that no reasonable jury could find that she was deliberately indifferent to Turben's foot pain

or diabetes. With regard to his foot pain, the court explained that it was undisputed that Dr. Marthakis consistently provided him with pain medication, physical therapy, and non-weightbearing devices to help him walk (some of which Turben refused), and that she reasonably believed he did not require a podiatrist referral because x-rays of his foot revealed no fracture or dislocation. Further, the court explained, Turben's disagreement with Dr. Marthakis about his need for a referral did not amount to an Eighth Amendment violation. As for Turben's diabetes, the court concluded that no reasonable jury could find that it was "plainly inappropriate" for Dr. Marthakis to change his insulin regimen to a different brand of the same drug, and that the Eighth Amendment did not entitle him to a specific type of insulin. Additionally, the court ruled, no reasonable jury could find that Dr. Marthakis was deliberately indifferent on July 12 when she delayed Turben's transfer to an emergency room so that nurses could run tests and try to stabilize his condition at the prison.

On appeal, Turben argues that the district court wrongly entered summary judgment for Dr. Marthakis on each of his deliberate-indifference claims. First, with regard to his foot condition, he argues that the court overlooked evidence that she failed to develop an adequate long-term treatment plan to alleviate his pain. He faults her for not identifying the source of his chronic pain and offering him only medication with uncomfortable side effects.

To establish deliberate indifference, Turben must furnish evidence sufficient to persuade a reasonable jury that Dr. Marthakis recklessly disregarded a serious risk to his health. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017). To succeed on his claims, he must show that Dr. Marthakis's treatment of his conditions was "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). In evaluating whether Dr. Marthakis was deliberately indifferent to Turben's health, we examine the totality of her medical care. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

With regard to Turben's foot pain, the district court correctly concluded that he did not furnish sufficient evidence for a jury to infer that Dr. Marthakis's care violated the Eighth Amendment. The record shows that Dr. Marthakis made repeated efforts to treat Turben's reported pain in his right foot: she ordered x-rays and custom-shoe wear for his injured foot, prescribed pain medication for him, and offered him accommodations that included a wheelchair and a walker. Although Dr. Marthakis declined Turben's request to see a podiatrist, the record reflects that she exercised her medical judgment based on an assessment of his condition—an assessment which we

afford deference unless no minimally competent professional would have responded as such under the circumstances. *See Pyles*, 771 F.3d at 409. And any disagreement between Turben and Dr. Marthakis about the appropriate course of treatment is insufficient to establish deliberate indifference. *Id.* at 412.

As for his claim that Dr. Marthakis acted with reckless disregard in treating his diabetes, Turben argues that the court overlooked evidence that she exacerbated his glucose-level irregularities by harmfully modifying his insulin regimen. He points first to her decision to switch him from Humulin 70/30 to Novolin 70/30 (when the latter brand had previously made him ill); and second, from Humalog 75/25 to Humulin 70/30 (after he was treated with the former during his first hospitalization). He asserts that her change of his insulin after his emergency-room visit was the cause of his second hospitalization.

But the district court correctly determined that Turben did not produce evidence sufficient to persuade a reasonable jury that Dr. Marthakis's changes to his insulin prescription constituted deliberate indifference. Turben may disagree with Dr. Marthakis's chosen course of treatment, but this disagreement does not create a fact issue over whether Dr. Marthakis acted with an intentional disregard toward his health. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 243 (7th Cir. 2021). Nor does Turben point to any evidence in the record to suggest that her decision to switch his insulin brand from Humulin 70/30 to Novolin 70/30 was the source of his glucose-level irregularities that led to his hospitalization.

Finally, Turben maintains that Dr. Marthakis delayed necessary emergency treatment for his diabetic episode on July 12, when she directed his nurse to cancel the ambulance request without personally evaluating his condition. But as the district court concluded, there is no evidence that Dr. Marthakis needed to examine him personally to arrive at a proper diagnosis. It is undisputed that Turben was being evaluated and tested by nurses who were reporting to Dr. Marthakis. On this record, a jury could not infer that it was "blatantly inappropriate" for her to choose to run tests and try to stabilize his condition before sending him to the emergency room. *See Pyles*, 771 F.3d at 409 (citations omitted).

AFFIRMED