In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1344

BIAGIO STRAGAPEDE,

*Plaintiff-Appellee,*

*v.*

CITY OF EVANSTON, ILLINOIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 08879 — **Edmond E. Chang**, *Judge.*

ARGUED SEPTEMBER 12, 2016 — DECIDED JULY 31, 2017

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Biagio Stragapede worked in water services for the City of Evanston for 14 years. In 2009 he suffered a traumatic brain injury at home. The City placed him on a temporary leave of absence during his recovery and rehabilitation. When he was medically cleared to return to work, Stragapede resumed full-time employment with the City. After just a few weeks, however, the City again placed

him on administrative leave and later terminated his employment. Stragapede sued for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, claiming that the City discriminated against him based on his disability.

After a weeklong trial, the jury found the City liable and awarded $225,000 in damages. The judge then held an evidentiary hearing on the issue of equitable remedies and concluded that Stragapede was entitled to backpay plus interest from the date he was fired until the time of judgment. The City moved for judgment as a matter of law, a new trial, and remittitur. All three motions were denied, and final judgment was entered for Stragapede.

The City attacks the judgment in several respects. First, the City challenges the denial of its motion for judgment as a matter of law, arguing that Stragapede was not a qualified person under the ADA because he was unable to perform the essential functions of his job. Alternatively, the City argues that even if Stragapede was qualified, he posed a direct threat to himself and to others, which is a statutory defense to liability. Finally, the City argues that the judge incorrectly calculated the backpay award. We reject these arguments and affirm.

## I. Background

From 1996 to 2010, Stragapede was employed as a water-services worker for the City of Evanston. The job entailed a variety of tasks, including finding leaks, testing water pressure, and replacing water meters.

In September 2009 Stragapede suffered a traumatic brain injury at home. The City placed him on a leave of absence

while he underwent rehabilitation. Before allowing Stragapede to return to work, the City required an evaluation by its occupational healthcare provider. The healthcare provider referred Stragapede to Dr. Zoran Grujic for a neurological assessment. Dr. Grujic examined Stragapede and advised the City that he was capable of returning to work. The doctor suggested, however, that the City prepare a work trial to test Stragapede's ability to perform the daily functions of his job in the field. From June 2 through June 4, the City gave Stragapede a three-day work trial, which he passed. On June 7 the City reinstated Stragapede to full-time employment.

In anticipation of Stragapede's return to work, the City made two accommodations for him: He was permitted to be off-task to consult with his supervisors if he had any questions, and he could use a map, pen and paper, and a tape recorder as needed to perform his duties. From June 7 until June 22, Stragapede appeared to do his job without much trouble.

Beginning on Wednesday, June 23, however, the City noticed some worrisome developments that continued over the following week. On that day Stragapede requested assistance to change out a water meter. The next day a city employee observed Stragapede driving through an intersection while looking down at his lap; the light was green, no pedestrians were present, and his momentary inattention did not result in an accident. On Friday Stragapede spent two hours at a job site installing a meter but was unable to complete the task. The following Monday Stragapede mistakenly went to the wrong location—Green Bay Road rather than Gross Point Road—for a "JULIE locate," which involves locating

and marking obscured water mains and sewer lines. On Wednesday Stragapede had another directional mishap, arriving at Colfax Place instead of Colfax Street for a water turn-on. Finally, on Thursday, July 1, Stragapede tripped on a set of steps and hurt his toes.

Based on these incidents, on July 2 the City again placed Stragapede on administrative leave and relayed its concerns to Dr. Grujic. He responded with two letters—one in July and one in September. In the July letter, Dr. Grujic concluded that these incidents were related to Stragapede's brain injury. In the September letter, Dr. Grujic wrote more pointedly that the incidents identified by the City rendered Stragapede unable to perform the essential functions of his job. On September 24 the City terminated Stragapede's employment.

Stragapede sued the City alleging that he was fired because of his disability in violation of the ADA. A jury returned a verdict for Stragapede and awarded $225,000 in damages. The judge then turned to the issue of equitable remedies, concluding that Stragapede was entitled to back-pay plus interest from the date he was fired until the time of judgment. The judge did not award front pay. The jury's damages award and the judge's backpay calculation brought the total award to $354,070.72.

The City moved for a new trial under Rule 59, judgment as a matter of law under Rule 50(b), and remittitur and amendment of the judgment under Rule 59(e). The judge denied all three motions and entered judgment for Stragapede.

## II. Analysis

The City challenges the denial of its motions for judgment as a matter of law and for remittitur and amendment of the judgment.

### A. Judgment as a Matter of Law

We review de novo the district court's denial of the City's motion for judgment as a matter of law. *EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 431 (7th Cir. 2012). The scope of review is limited to whether the evidence presented at trial is sufficient to support the verdict when viewed in the light most favorable to the nonmoving party. *Id.* We will reverse only if "on the basis of the admissible evidence, no rational jury could have found for the prevailing party." *Id.* (quotation marks omitted).

#### 1. *Essential Functions*

The ADA prohibits discrimination against a qualified individual with a disability on the basis of that disability. *Basith v. Cook County*, 241 F.3d 919, 926–27 (7th Cir. 2001). A qualified individual is one "who, with or without reasonable accommodation, could perform the essential functions of the employment position." *Id.* at 927.

The parties do not dispute the essential functions of a water-services worker for the City of Evanston. Nor does the City point to any particular function that Stragapede was incapable of performing. Instead, the City argues that Stragapede was unable to do the job in general and isolates three categories of evidence to support this claim: Dr. Grujic's testimony, the testimony of Stragapede's coworkers, and Stragapede's attendance record.

Dr. Grujic examined Stragapede only once, in the spring of 2010 in connection with his return to work. Based on this assessment, the doctor advised the City by letter dated April 6 that Stragapede should be able to resume work. After Stragapede returned to work, however, the City sought a reevaluation and sent information to Dr. Grujic related to Stragapede's performance on the job. Based on the information he received from the City, Dr. Grujic wrote a second letter in July 2010 advising that the work difficulties identified by the City were related to Stragapede's brain injury. Finally, in a third letter in September 2010, Dr. Grujic said that Stragapede was unable to perform the essential functions of his job. But he hedged his opinion, noting that it was based entirely on information provided by the City.

It's the jury's job to weigh conflicting evidence, make credibility determinations, and evaluate the trial record based on its collective common sense. *See United States v. Bloch*, 718 F.3d 638, 643 (7th Cir. 2013) ("[T]he law relies on the collective common sense and human experience of the jury."). The jury may have given Dr. Grujic's April opinion more weight than his later opinions; the latter two were based entirely on information supplied by the City, and the jurors may have questioned whether the information was accurate or complete. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000) (pointing out that the jury might disbelieve a doctor's testimony when an opposing party "elicited testimony that [the doctor] had really done no investigation"). It was not irrational for the jury to discount Dr. Grujic's September opinion that Stragapede was unable to perform the essential functions of his job.

The City next points to testimony by Vicki Biner, one of Stragapede's supervisors. Biner testified that Stragapede could not complete his meter-installation and other water-services work. But Biner had never observed Stragapede in the field. In contrast, Stragapede's direct supervisor, Tim Bartus, observed Stragapede in the field and testified that he was capable of installing meters perfectly. In addition, Bartus performed three to four spot checks on Stragapede's JULIE work and found it accurate each time. The jury was charged with sorting through these conflicting reports and deciding how much weight, if any, each deserved.

Finally, the City contends that Stragapede was so frequently absent from his job that he was unable to fulfill even its most basic function—regular attendance. To support this position, however, the City counts as absences from work Stragapede's returns to the office to ask questions. It's true that the ADA does not protect persons who have erratic or unexplained absences from work, *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001), but we have "not establish[ed] a hard-and-fast rule that no absences from work need be tolerated," *id.* at 949 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999)). The evidence shows that Stragapede had to return to the office three or four times to seek assistance with his computer login and password. The jury could reasonably conclude that these infrequent and temporary office trips should not count as absences from work.

**2. *Direct Threat***

The ADA provides a defense if the employee's disability poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). A "direct

threat" is "a significant risk to the health or safety of others that cannot be eliminated by a reasonable accommodation." *Id.* § 12111(3). Four factors determine whether the risk is significant: "(1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that potential harm will occur; and (4) the imminence of potential harm." *Emerson v. N. States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001).

The City's primary argument is that it does not matter whether Stragapede actually posed a direct threat to health or safety; it's enough that the City *thought* he was a direct threat. The Supreme Court disagrees: "The ADA's direct threat provision stems from the recognition … of the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). *Bragdon* holds that an employer's "belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability." *Id.* Rather, a "direct threat" defense is based solely on "medical or other objective evidence." *Id.*

The medical and objective evidence here was mixed. To support the defense, the City relied on testimony from Stragapede's supervisor, the incident in which Stragapede took his eyes off the road while driving through an intersection, the incidents in which Stragapede mistakenly reported to the wrong location, and Dr. Grujic's opinion.

The jury was free to discount this evidence or to treat it as insufficient to support an inference that Stragapede posed an actual threat to his own safety or the safety of others. Stragapede testified in general terms that he followed safety

protocols. He also testified that the intersection incident occurred only because he was reaching to grab a clipboard that had bounced off the seat and fallen. He noted, moreover, that the light was green and no pedestrians were present. Reasonable jurors could accept this explanation and reject the City's argument that the incident supports an inference that Stragapede was a safety threat. The jury also might reasonably have concluded that the two directional mishaps were not a safety issue at all. Lastly, as we've noted, the jury was free to discount Dr. Grujic's July and September opinions, which relied entirely on the City's characterization of Stragapede's performance.

We take the City at its word that "not just anyone" can do Stragapede's job. But the more focused inquiry is whether Stragapede could do it without significant risk to health or safety. It was reasonable for the jury to conclude that he could.

The City also argues that the judge wrongly excluded evidence that Stragapede was involved in an auto accident before his head injury. The judge ruled that the earlier accident was impermissible character evidence under Rule 404(b) of the Federal Rules of Evidence. That may have been a mistake; the judge failed to consider whether character was an element of a claim or defense. When that is the case, evidence of that character trait may be admissible. MCCORMICK ON EVIDENCE § 187 (Kenneth S. Broun ed., 7th ed. 2016). The City offered the preinjury accident as evidence that Stragapede's driving posed a safety risk, an aspect of its direct-threat defense.

Even if the judge wrongly excluded this evidence, the error is harmless if "the record indicates the trial result would

have been the same." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009). The City's direct-threat defense was predominantly based on Dr. Grujic's opinions; the single episode of inattentive driving did not loom large. The evidentiary error, if there was one, was harmless.

### 3. *Undue Hardship*

The City makes a last-ditch argument that an accommodation suggested by Dr. Grujic—that a coworker should observe Stragapede's work—would have been an undue hardship to its water-services operation. The glaring problem with this argument is that undue-hardship analysis is appropriate only when the court finds that an accommodation is necessary. *See* 42 U.S.C. § 12112(b)(5)(A) (stating that to "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual … unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity"). The jury's determination that Stragapede was capable of performing the essential functions of his job did not depend on the presence of a ride-along companion. The question of undue hardship is beside the point.

## B. Remittitur of the Backpay Award

The City's final argument is a challenge to the judge's denial of its motion to amend the backpay award under Rule 59(e). We review the denial of a Rule 59(e) motion for abuse of discretion. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). Amendment of the judgment is proper only when "the movant presents newly discovered evidence that was

not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). A manifest error occurs "when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt*, 807 F.3d at 253 (internal quotation marks omitted).

A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay. *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003). The plaintiff must submit evidence to support his calculation of backpay, *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994), and the burden then "shifts to the defendant to show that the [employee] failed to mitigate damages or that damages were in fact less than [he] asserts," *id.* The City does not contest the initial sum Stragapede claimed. Instead, the City concentrates its argument on a claimed failure to mitigate damages.

To prove a failure to mitigate in this context, the employer must show that "(1) the [employee] failed to exercise reasonable diligence to mitigate his damages, and [that] (2) there was a reasonable likelihood that the [employee] might have found comparable work by exercising reasonable diligence." *Fleming v. County of Kane*, 898 F.2d 553, 560 (7th Cir. 1990) (emphases omitted). The City argues that we should abandon this two-part framework in favor of an approach endorsed by the Second Circuit, which eliminates the employer's burden to prove the availability of other comparable employment. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998). We decline to do so for two reasons.

First, our framework for evaluating mitigation questions is longstanding and has been repeatedly reaffirmed. *See Brown v. Smith*, 827 F.3d 609, 616 (7th Cir. 2016); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1581 (7th Cir. 1996); *Hutchison*, 42 F.3d at 1044; *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990); *United States v. City of Chicago*, 853 F.2d 572, 578 (7th Cir. 1988); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir. 1986). Second, even in a precedential vacuum, our two-part approach best comports with the concept of mitigation in this context. An employee can mitigate his damages only if it is within his power to reduce the harm he suffered. The plaintiff's backpay award should not be reduced based on failure to mitigate if reasonably diligent effort would not have been likely to produce comparable employment. The judge faithfully applied circuit precedent in declining to reduce the backpay award for failure to mitigate. There was no manifest error.

AFFIRMED.