In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-3111

TODD KURTZHALS,

*Plaintiff-Appellant,*

*v.*

COUNTY OF DUNN,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 18 C 247 — **James D. Peterson**, *Chief Judge*.

_____

ARGUED MAY 28, 2020 — DECIDED AUGUST 10, 2020

_____

Before MANION, KANNE, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Sergeant Todd Kurtzhals worked for
the Sheriff's Office of Dunn County, Wisconsin. After he
threatened physical violence against one of his fellow officers,
Deputy Dennis Rhead, the Office put him on temporary paid
administrative leave and ordered him to undergo a fitness-
for-duty evaluation. Kurtzhals was convinced that his super-
visors took this course of action because they knew that
Kurtzhals has a history of Post-Traumatic Stress Disorder

(PTSD), not because his conduct violated the County's Workplace Violence Policy and implicated public safety.

Acting on that conviction, Kurtzhals sued Dunn County for employment discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. The district court concluded that no reasonable jury could find that Kurtzhals's PTSD was the "but for" cause of the County's action or that it was plainly unreasonable for Kurtzhals's superiors to believe that a fitness-for-duty examination was warranted, and so it granted summary judgment to the County. We agree with that assessment and affirm.

**I**

We assess the district court's grant of summary judgment *de novo*. *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In reviewing a grant of summary judgment, we construe all facts, and draw all reasonable inferences from those facts, in favor of the nonmoving party," in this case Kurtzhals. *Hackett*, 956 F.3d at 507 (internal quotation marks omitted). We do not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Id.* We will "affirm the district court only when no reasonable jury could have found for the plaintiffs." *Id.* at 507–08.

The account of the facts that follows adopts that well-established perspective. On April 1, 2016, Kurtzhals was sitting at his desk when Rhead entered his office, aggressively moved towards Kurtzhals, yelled at him, and called him a liar.

Kurtzhals ordered Rhead to get out of his office. When Rhead did not leave immediately, Kurtzhals said something to the effect of, "if you call me a liar again, we are going to take it outside," implying a possible physical altercation. Several witnesses in the workplace at the time corroborated Kurtzhals's words. This implied threat violated the Dunn County Workplace Violence Policy.

Following the incident, Sheriff Dennis Smith decided to put Kurtzhals on paid administrative leave and ordered him to undergo a fitness-for-duty evaluation. Smith made this decision after consulting with Chief Deputy Marshall Multhauf, the Corporation Counsel, the Human Resources Manager, the County Manager, and Dr. Thomas Campion, a psychologist who specializes in law-enforcement psychological evaluations and has worked with the Dunn County Sheriff's Office in the past. Sheriff Smith also hired an outside employment-law attorney, Mindy Dale, to conduct an investigation and provide recommendations. Dale did so and concluded that Kurtzhals had violated the Workplace Violence Policy and should receive some sort of reprimand. She nonetheless offered the opinion that a fitness-for-duty evaluation was premature and an overreaction to the single incident. Smith chose to order the evaluation anyway. In contrast, Smith did not place Rhead on leave, require him to submit to a fitness-for-duty evaluation, or otherwise punish him for his role in the altercation with Kurtzhals.

Kurtzhals has a history of PTSD stemming from his service in the military. When Kurtzhals returned to the Sheriff's Office in 2014 following a combat deployment, he informed two of his supervisors, then-Chief Deputy Paul Gunness and then-Captain Kevin Bygd, that he had been diagnosed with PTSD

and received counseling. Gunness and Bygd told Kurtzhals that they would pass that information on to Sheriff Smith. The record does not reveal whether they ever did so. After the incident with Rhead, when Smith and Multhauf told Kurtzhals that they were placing him on administrative leave and ordering a fitness-for-duty evaluation, Kurtzhals asked if their decision had anything to do with his PTSD. Smith and Multhauf said nothing in response. They both deny that they knew about Kurtzhals's PTSD diagnosis prior to deciding how to address his misconduct. We return to this question below.

## II

Kurtzhals asserts two claims under the ADA: first, he alleges that the County discriminated against him on the basis of a disability, in violation of 42 U.S.C. § 12112(a), when it placed him on paid administrative leave; and second, he contends that the County required him to take a fitness-for-duty examination that was not "job-related and consistent with business necessity," in violation of 42 U.S.C. § 12112(d)(4)(A).

## A

Section 12112(a) of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Subsection (b) outlines various ways in which an employer might discriminate against an employee, including by "limiting, segregating, or classifying … [an] employee in a way that adversely affects the opportunities or status of such … employee because of the disability of such … employee," and by "utilizing standards,

criteria, or methods of administration … that have the effect of discrimination on the basis of disability." *Id.* §§ 12112(b)(1), (3)(A).

To prove a violation of section 12112(a), a plaintiff must show that: 1) he is disabled; 2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; 3) he suffered an adverse employment action; and 4) the adverse action was caused by his disability. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). It is essential for the plaintiff to link the adverse action with his disability. In order to do so, we have held that "a plaintiff must show a genuine issue of material fact exists regarding whether his disability was the but for' reason for the adverse action." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). We note for completeness that the ADA Amendments Act of 2008 changed the language of the statute from prohibiting discrimination "because of" a disability to prohibiting discrimination "on the basis of" a disability. See Pub. L. No. 110-325, § 5(a)(1) (Sept. 25, 2008). Nearly 12 years later, it remains an open question in this circuit whether that change affects the "but for" causation standard we apply in these cases. *Monroe*, 871 F.3d at 504 (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 n.1 (7th Cir. 2010); *Roberts*, 817 F.3d at 565 n.1; *Hooper v. Proctor Health Care, Inc.*, 804 F.3d 846, 853 n.2 (7th Cir. 2015)). Kurtzhals has not complained about the use of the "but for" standard, however, and so we will apply it here.

Our *de novo* review of the record satisfies us that a trier of fact could find that Kurtzhals has a history of PTSD, and that his symptoms, when they flare up, include insomnia, flashbacks, and loss of appetite. He does not need to establish that

his symptoms interfered with his ability to work; it is enough that they substantially interfered with any major life activity, and we can accept that they did. Second, there is little dispute that Kurtzhals is qualified to perform the essential functions of his job as a police officer. He fulfilled his duties seemingly without incident from the time he returned from active military duty in 2014 through March 2016 and was given the position of investigation sergeant in 2015. Although his behavior on April 1, 2016, did not meet his employer's legitimate expectations for employee conduct, that does not render him unqualified for his job. There is no suggestion that his PTSD made him unable to control his behavior or caused him to lash out at Rhead.

That brings us to the question whether Kurtzhals's evidence, if believed by the trier of fact, suffices to show that he suffered an adverse employment action. Kurtzhals was placed on paid administrative leave for approximately three months. During that time, he received his base salary plus pay for 27 hours of overtime. The County calculated the overtime figure by counting the number of extra shifts he might have been able to take during his leave period. Kurtzhals returned to work in the same position he had before, and he faced no further consequence other than an oral reprimand. This was not enough, however, in his view: he asserts that he was harmed by not being able to earn even more overtime pay for which he would have been eligible by coming in early or leaving late on his regular shifts.

A plaintiff must show that he suffered a "materially adverse employment action," not merely a minor or even trivial one. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). "While adverse employment actions extend beyond readily

quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Id.* (quoting *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000)). Materially adverse employment actions include "cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished." *Id.* "When overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016).

Because Kurtzhals received his full base pay and some overtime pay, the question here is whether the loss of potential additional overtime pay for which he was eligible was materially adverse. The policy on his eligibility for overtime remained consistent, *i.e.* if he worked the overtime, he would be paid for it. His ability to earn overtime was not speculative or conditional. Kurtzhals provided evidence that during 2015 and 2016 (when he was not on administrative leave) he averaged between 4.7 and 6.3 hours per week of overtime. Applying that average to the 11.5 weeks he was on administrative leave, Kurtzhals could have expected to work between 54 and 72 hours of overtime—twice as much or more as the 27 hours for which the County paid him. This is enough at the summary judgment stage to show that he suffered from an adverse employment action.

That leaves causation, often the most difficult element. And here Kurtzhals has not met his burden to raise a genuine dispute over the question whether unlawful discrimination on the basis of his PTSD was the "but for" cause of the adverse employment action. In other words, could a reasonable juror conclude that he would not have suffered the same adverse

employment action if he were not disabled and everything else had remained the same? *Graham v. Arctic Zone Iceplex, LLC*, 930 F.3d 926, 929 (7th Cir. 2019) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)).

Sheriff Smith's stated reasons for placing Kurtzhals on administrative leave and ordering a fitness-for-duty evaluation were that Kurtzhals violated the County's Workplace Violence Policy when he threatened Rhead with physical violence; that Kurtzhals previously had reacted angrily to being passed over for a promotion; and that Kurtzhals might pose a threat to his colleagues or members of the public. None of these reasons explicitly mentions PTSD. Instead, the focus is on Kurtzhals's unprofessional conduct.

Kurtzhals asserts that these reasons are all pretextual and are intended to hide Smith's true motivation for ordering the fitness-for-duty evaluation: Kurtzhals's PTSD. "In evaluating pretext, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the [action]." *Graham*, 930 F.3d at 929 (internal quotation marks omitted). Kurtzhals says that Smith and Multhauf are lying when they deny that they knew about Kurtzhals's PTSD when they decided to put him on administrative leave. Further, he finds it telling that they were silent when he asked if his PTSD was a motivating factor (they dispute that he asked this). He also argues that their decision not to discipline Rhead shows that they did not truly think a mild violation of the Workplace Violence Policy necessitated a fitness-for-duty evaluation.

The problem for Kurtzhals is that he did not offer any evidence to support his claim of pretext. There is no competent evidence that Smith and Multhauf knew about Kurtzhals's

PTSD; we have only Kurtzhals's statement that two other officers, Gunness and Bygd, told him that they would tell Smith about his condition. This is too remote. In addition, assuming for summary judgment purposes that Kurtzhals did ask Smith and Multhauf if their decision was based in part on his PTSD, their silence falls well short of an affirmative "yes." And even if we infer from their silence that they both knew about Kurtzhals's PTSD and took it into account, Kurtzhals still does not meet the "but for" causation standard. Contrary to Kurtzhals's argument that he and Rhead acted in a comparable fashion and should have been treated similarly, the record reflects that only Kurtzhals explicitly threatened physical violence. Rhead may have behaved in an intimidating fashion towards Kurtzhals, but their behavior was not identical. There is no evidence to suggest that Smith did not genuinely and reasonably see a difference between the two.

In sum, Kurtzhals has not provided enough evidence to allow a reasonable juror to conclude that his PTSD was the "but for" cause of Smith's decision to put him on administrative leave and order a fitness-for-duty evaluation. The district court thus correctly granted summary judgment to the County on this count.

## B

Section 12112(d)(4)(A) of the ADA says that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). This provision applies to all employees, with or without an actual or perceived disability.

An "examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009). "[I]nquiries into an employee's psychiatric health may be permissible when they reflect concern for the safety of employees and the public at large." *Id.* (internal quotation marks omitted).

Because Kurtzhals was a police officer and responsible for public safety, his "well-being was essential not only to [his] safety but to the public at large; thus, the Department had a particularly compelling interest in assuring that [he] was both physically and mentally fit to perform [his] duties." *Id.* This "special work environment" necessitates greater leeway for supervisors to order job-related fitness-for-duty evaluations. *Id.*; see also *Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000) ("It was entirely reasonable, and even responsible, for [the police department] to evaluate [the officer's] fitness for duty once it learned that he was experiencing difficulties with his mental health."); *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) ("In any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity.").

Kurtzhals argues that a fitness-for-duty evaluation was not consistent with business necessity in his case because "heated exchanges with voices raised and the use of swear words were not unusual in the department," and other employees had committed worse misconduct in the past and not

been ordered to get an evaluation. The Office did not have a normal practice of ordering fitness-for-duty evaluations for current employees and, in Kurtzhals's view, his conduct was far from egregious enough to warrant one. He also emphasizes that Smith did not order Rhead to get an evaluation and that Dale, the outside attorney, thought a fitness-for-duty evaluation for Kurtzhals was an overreaction. But there was no one right answer in this situation. Kurtzhals has no way of showing that Sheriff Smith did not genuinely believe that Kurtzhals's conduct was more problematic than Rhead's. And Dale's recommendations were just that—advice that the Sheriff was not obliged to accept. Further, the Office's past practice of not asking for psychological evaluations when they might have been warranted did not preclude Smith from ordering an evaluation in Kurtzhals's case. There is no dispute that Kurtzhals threatened Rhead and in so doing violated the Workplace Violence Policy. A reasonable person could see this as evidence that Kurtzhals had a short fuse and might lash out again at a colleague or a member of the public.

Sheriff Smith was responsible for addressing the fallout from the altercation between Kurtzhals and Rhead. He might have chosen to let well enough alone, and that too might have been a reasonable response. But he chose to draw a line between physical threats and verbal abuse and to call for a fitness examination only for the former. Nothing in the ADA forbids this line, and so summary judgment was proper on this count as well.

## III

Kurtzhals implicitly threatened physical violence against a colleague in violation of Dunn County's Workplace Violence Policy. There is no evidence that his PTSD, rather than

his inappropriate conduct, was the "but for" cause of Sheriff Smith's decision to place him on administrative leave and order a fitness-for-duty evaluation. This decision was reasonable and consistent with business necessity. We therefore AFFIRM the district court's grant of summary judgment to the County.