In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 22-1393, 22-1430, 22-2395, & 22-2451

JOHN NAWARA,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

COOK COUNTY and THOMAS J. DART,

*Defendants-Appellees, Cross-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-02393 — **Rebecca R. Pallmeyer**, *Judge.*

———————————

ARGUED MAY 17, 2023 — DECIDED APRIL 1, 2025

———————————

Before RIPPLE, SCUDDER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* John Nawara, a former correctional officer at Cook County Jail, initiated several altercations with other county employees. The Cook County Sheriff's Office determined that Nawara needed to undergo a fitness-for-duty examination before returning to work. And, as part of this process, it required Nawara to sign two medical information release forms. Nawara resisted at first but eventually relented. But before he did, he sued Cook County and Sheriff Thomas

Dart in his official capacity (collectively "the Sheriff"), alleging that the examination requirement and inquiry into his mental health violated § 12112(d)(4) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

Nawara prevailed at trial, but the jury awarded him zero damages. Nawara then filed a post-trial motion, requesting equitable relief in the form of back pay and lost pension benefits as well as restoration of his seniority.[1] The court granted the latter, but denied the former concluding that the Sheriff's violation of Nawara's rights under § 12112(d)(4) cannot support an award of back pay.

Nawara now appeals the district court's denial of his request for back pay. In turn, the Sheriff cross-appeals the court's order restoring Nawara's seniority. We affirm the district court's restoration of Nawara's seniority, but because the ADA defines a violation of § 12112(d)(4) to be discrimination "on the basis of disability," we reverse the district court's denial of Nawara's request for back pay and remand for further proceedings.

**I**

John Nawara joined the Cook County Sheriff's Office in 1998. He was working as a correctional officer in 2016 when he had a series of heated altercations with his superior officer, Superintendent Karen Jones-Hayes. Several weeks later, he engaged in another contentious interaction with Rebecca Reierson, a human resources manager, and Winifred Shelby, an

---

[1] Because there is no reason to differentiate between back pay and lost pension benefits for the purpose of this appeal, we will refer to both simply as "back pay."

occupational health nurse. As a result, Reierson and Shelby required Nawara to undergo a fitness-for-duty examination before returning to work, and the Sheriff placed Nawara on paid leave.

To initiate the examination process, Shelby instructed Nawara to submit two signed medical information authorization forms—one allowing medical providers to send his information to the examination company, and the other permitting the Sheriff's Office to collect his information from medical providers to send to the company expediting the process. Despite repeated requests, Nawara refused to submit the executed forms, and the process stalled.

Nawara's paid leave ended on April 25, 2017, and he was placed on unpaid leave, during which he worked other jobs. Nawara eventually decided to return to the Sheriff's Office and provided the authorization forms in August 2017. After undergoing the fitness-for-duty examination, he was declared fit for duty and returned to work as a correctional officer on September 26, 2017. In September 2019, Nawara became a Cook County Sheriff's police officer.

While on leave, Nawara filed this lawsuit, alleging that the Sheriff's actions violated 42 U.S.C. § 12112(d)(4). After a trial, the jury agreed with Nawara that the examination requirement and related requests for medical records violated § 12112(d)(4)(A). That provision prohibits an employer from requiring a medical examination or inquiring about an employee's disability status unless it is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). The jury, however, awarded no damages.

Nawara then filed a post-trial motion requesting equitable relief in the form of back pay and the restoration of his seniority. After reviewing the pertinent statutory provisions, the district court determined that a plaintiff, like Nawara, must have a disability or perceived disability for a violation of § 12112(d)(4) to constitute discrimination on account of disability. *Nawara v. County of Cook*, 570 F. Supp. 3d 594, 600–01 (N.D. Ill. 2021). And because the remedy provision applicable here, 42 U.S.C. § 2000e–5, bars a court from awarding back pay where an employee suffers an adverse employment action "for any reason other than discrimination" on account of disability, the court denied Nawara's request and entered judgment accordingly. *Id.* (citing 42 U.S.C. § 2000e–5(g)(2)(A)). The court also declined to issue an order restoring his vacation days, holidays, sick days, and seniority.

Nawara subsequently moved to amend the judgment under Fed. R. Civ. P. 59(e), arguing that the district court had failed to fully evaluate his request for the restoration of his seniority. Upon closer examination, the district court agreed and granted Nawara's request to restore his seniority based on the Supreme Court's allowance of such relief in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 770 (1976). *See Nawara v. County of Cook*, No. 17 C 2393, 2022 WL 3161805, at *2 (N.D. Ill. Feb. 15, 2022), *corrected*, 2022 WL 3161838 (N.D. Ill. July 29, 2022).

At that point, the Sheriff moved to amend the judgment restoring Nawara's seniority. According to the Sheriff, the court had ignored a prior stipulation stating that seniority would be restored to Nawara "if the Court awards back pay." In the Sheriff's view, because the district court denied back pay, Nawara was not entitled to his seniority. The district

court, however, disagreed and denied the Sheriff's motion. *Nawara*, 2022 WL 3161838, at *3. Both sides have appealed the respective rulings.

## II

### A. § 12112(d) and Back Pay

In his appeal, Nawara contends that the district court erred by construing the relevant statutes in a way that renders him ineligible for back pay. Thus, this case presents a question of statutory interpretation that we review *de novo*. *United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015). And, as in any case of statutory construction, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). If "that examination yields a clear answer, judges must stop." *Id.* For where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

Our analysis starts with the statutory provision giving rise to Nawara's claim—42 U.S.C. § 12112. This section begins with a broad proscription: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[2]

Later in subsection (d), the statute provides that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." *Id.* § 12112(d)(1). And, as applied to current employees, this means:

> [An employer] shall not require a medical examination and shall not make inquiries of an employee as to *whether such an employee is an individual with a disability or as to the nature or severity of the disability*, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

*Id.* § 12112(d)(4)(A) (emphasis added).

Based on this language, we have held that an employee may invoke § 12112(d)(4)(A) even if he is not disabled or perceived to be disabled. *See Kurtzhals v. County of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020). And that is what we have here. Nawara has never claimed that he was disabled or that the

---

[2] The ADA defines "covered entity" as an employer, employment agency, labor organization, or joint labor-management committee, 42 U.S.C. § 12111(2), and a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," *id.* § 12111(8). Unless it matters, we will refer to the former as "employer" and the latter as "employee." In addition, the term "disability" means: (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* § 12102(1)(A)–(C).

Sheriff perceived him to be disabled. This is helpful to keep in mind as we review the remedies available under the ADA.

The ADA's enforcement provision, § 12117, incorporates the "powers, remedies, and procedures set forth in [42 U.S.C.] sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9." 42 U.S.C. § 12117(a). In so doing, it makes available to ADA plaintiffs the same remedies available to Title VII plaintiffs. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010).

Subsection 2000e–5(g) addresses the availability of back pay. 42 U.S.C. § 2000e–5(g). It begins with the general rule that a "court may … order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, *with or without back pa*y[,] … or any other equitable relief as the court deems appropriate." *Id.* § 2000e–5(g)(1) (emphasis added); *see Vega v. Chi. Park Dist.*, 12 F.4th 696, 707 (7th Cir. 2021) ("Title VII affords wide latitude to fashion an award that fits the circumstances peculiar to the case[.]") (internal quotation marks and citation omitted).

The next subsection, however, contains a substantial limitation: "No order of the court shall require … the payment to [a plaintiff] of any back pay, if such individual was … suspended, … or discharged for *any reason other than discrimination* on account of race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–5(g)(2) (emphasis added).

Recall that the jury found that the Sheriff had violated § 12112(d)(4)(A) by requiring Nawara to undergo a fitness-for-duty examination and disclose his medical records. But the jury did not find (because it was not asked to) that Nawara

had a disability or a perceived disability. Accordingly, as the Sheriff sees it, the unlawful conduct, as determined by the jury, was for a "reason other than discrimination on account of" disability, and § 2000e–5(g)(2) precludes Nawara from recovering back pay.

Pushing back, Nawara offers two arguments. First, he points out that § 2000e–5(g)(2) does not mention "disability" at all; thus, Nawara posits, the provision applies only to cases involving Title VII claims and not ADA claims. Alternatively, Nawara contends, the ADA counts a violation of § 12112(d)(4)(A) as a form of "discrimination on account of disability" and, thus, § 2000e–5(g)(2)'s bar does not apply. We believe that Nawara is wrong on the first point but right on the second.

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). While the ADA addresses other "major spheres of public life" such as public services and public accommodations, *see Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018), "Title I of the ADA … is devoted to eliminating employment discrimination," *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 834 (7th Cir. 2005).

To that end, § 12112(a) prohibits "discrimination … on the basis of disability" as to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And § 12117(a) incorporates § 2000e–5 in its entirety, including all the "powers, remedies, and procedures" attendant to it. *Id.* § 12117(a). Thus, § 12117(a) requires us to replace in § 2000e–5(g)(2)(A) the phrase "discrimination on account of race … national origin" with "discrimination on account of disability" while

leaving the remainder of the subsection intact. This is the most natural reading of § 12117(a).

Nawara's preferred construction, on the other hand, would lead to nonsensical results. He argues that the district court erred "when it rewrote the statute and added the term 'disability' to 42 U.S.C. § 2000e-5(g)(2)(A)." But if we were to maintain the language of § 2000e–5(g)(2) as is (as Nawara proposes), § 12117(a)'s incorporation of § 2000e–5 would mean that *no* ADA claimant would be able to recover back pay even if he or she were able to prove discrimination due to disability. *But see Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 608 (6th Cir. 2018) (affirming the award of back pay where a jury found discrimination due to disability); *Stragapede v. City of Evanston*, 865 F.3d 861, 868 (7th Cir. 2017), *as amended* (Aug. 8, 2017) (same); *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) (same). Moreover, Nawara's interpretation would place § 2000e–5(g)(2) at odds with subsection (g)(1), which expressly permits the court to award back pay in ADA cases. Therefore, we agree with the district court that, in the context of the ADA, § 2000e–5(g)(2) precludes back pay when an employer acts unlawfully for any reason other than "discrimination on account of disability."

But our analysis does not end there. This construction of § 2000e–5(g)(2) leads to the second question—does the Sheriff's violation of § 12112(d)(4)(a) count as discrimination on account of disability even absent evidence that Nawara had a disability or a perceived disability? Our examination of the statutory text leads us to answer yes.

We return to the general rule—§ 12112(a) prohibits "discrimination … on the basis of disability" as to the "terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). In turn, § 12112(d)(1) explains that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). In the district court's view, these two provisions taken together merely add "medical examinations and inquiries" to the various ways, enumerated in § 12112(a), that an employer might discriminate against a disabled individual. Under this reading, being subject to medical examinations and inquiries is a means of discriminating, not discrimination in and of itself. This interpretation, however, suffers from several flaws.

First, reading § 12112(d)(1) merely to add medical examinations and inquiries as additional examples of unlawful discrimination under § 12112(a) would render § 12112(d)(1) surplusage because a medical examination and inquiry will *always* be a job application procedure or a term or condition of employment. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision … and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").

Furthermore, incorporating § 12112(d) wholesale into § 12112(a) is an odd fit, because the latter requires the ADA claimant to have a disability or perceived disability, *see* § 12102(1)(A)–(C), while the former permits an individual to file a claim even though he may not. *See Kurtzhals*, 969 F.3d at 730 (noting § 12112(d)(4)(A) "applies to all employees, with or without an actual or perceived disability"); *see also Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 (10th Cir. 1998) ("It makes little

sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.") (internal quotation marks and citation omitted). Nor is it satisfactory to say that subsection (d)(1) operates entirely separately from subsection (d)(2), (3), or (4), because (d)(1) sets forth the "general" rule as the title indicates. *See Yates v. United States*, 574 U.S. 528, 540 (2015) (stating that, although "headings are not commanding, they supply cues" as to Congress's intent).

The better construction of § 12112(d)(1) can be gleaned from its text. It refers to the "prohibition against discrimination referred to in subsection (a)." Employing the "nearest-reasonable-referent" canon of construction, Scalia & Garner, Reading Law, at 152, we take "referred to in subsection (a)" as modifying "discrimination." And the "discrimination" referenced in § 12112(a) is "discrimination *against a qualified individual on the basis of disability*." Thus, returning to the language in § 12112(d)(1), § 12112(a)'s prohibition on discriminating against a qualified individual on the basis of disability "shall include" § 12112(d)'s prohibition on requiring a medical examination or inquiry as described in § 12112(d)(4)(A). Put another way, to prove a violation of § 12112(d)(4) is to prove discrimination on the basis of disability under § 12112(a). *Accord Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566 (6th Cir. 2014) ("The ADA ban of 'discriminat[ion] ... on the basis of disability' thus encompasses medical examinations and disability inquiries involving employees.").

The Sheriff disagrees with such a construction, arguing that it goes against the commonly understood meaning of "discrimination." But the colloquial use of a word does not necessarily bind its meaning in a particular statute. *See Bostock*

*v. Clayton County*, 590 U.S. 644, 665–67 (2020) ("[C]onversational conventions do not control … legal analysis."). After all, Congress can define "discrimination … on the basis of disability" however it likes. And here, Congress effectuated the broad remedial purpose of the ADA by including medical examinations and inquiries into an employee's disability status within the definition of "discrimination … on the basis of disability."

Nor is this unique to § 12112(d). For example, § 12112(b)(6) prohibits "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability." Similarly, § 12112(b)(3) forbids "utilizing standards, criteria, or methods of administration … that have the effect of discrimination on the basis of disability; or … that perpetuate the discrimination of others who are subject to common administrative control[.]" Moreover, § 12112(b)(4) proscribes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" And § 12112(b) expressly includes all of this conduct—whether or not the target individuals are disabled—within the phrase "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b).[3]

In sum, read together, § 12112(a) and § 12112(d)(1) define

---

[3] This construction is also consistent with the Equal Employment Opportunity Commission's own definition of "discrimination" in its regulations governing the ADA. *See* 29 C.F.R. § 1630.4(a)(2) (defining the term "discrimination" to include requiring medical examinations and inquiries).

a violation of § 12112(d)(4)(A) to constitute discrimination on the basis of disability under § 12112(a). Consequently, § 12117(d)—drawing as it does on Title VII's remedial structure—authorized Nawara to recover back pay for the Sheriff's ADA violation.[4]

**B. Restoration of Seniority**

That leaves the Sheriff's cross-appeal. The Sheriff contends that we must vacate the award of restored seniority as moot because, starting in 2019, Nawara ceased to work as a correctional officer and became a police officer in a separate department within the Sheriff's Office.

"A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (internal quotation marks omitted). "The party asserting mootness bears the burden of persuasion." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004).

To the Sheriff's point, after Nawara transferred to the Cook County Sheriff's police department, he joined a different union and his seniority clock was reset for police assignments. The Sheriff, however, has made no attempt to show that Nawara's increased seniority would be useless to him as a police officer in the Sheriff's Office. This failure of proof alone is fatal to the Sheriff's position.

---

[4] We take this opportunity to commend the United States for its amicus brief which provided a helpful discussion of the relevant statutory provisions.

In any event, we note that the relevant collective bargaining agreements between the Sheriff's Office and the police officers' union (which are publicly available government documents) provide that, in the event of a tie in seniority in the police department, the employee's seniority in the Sheriff's Office will be used to break the tie.[5] Thus, it appears that the restoration of Nawara's seniority could benefit him even in his current employment. Accordingly, the Sheriff's invocation of mootness fails.

### III

For these reasons, we AFFIRM the judgment to the extent that it restores Nawara's seniority but REVERSE the judgment as to Nawara's ability to request back pay. This case is remanded for further proceedings consistent with this opinion.

---

[5] *See* Collective Bargaining Agreement § 4.2, effective December 1, 2017 through November 30, 2020, https://opendocs.cookcountyil.gov/human-resources/labor-agreements/2017-2020/2017-2020_FOP_County_ Police_Officers.pdf; Collective Bargaining Agreement § 8.1, effective December 1, 2020 through November 30, 2025, https://opendocs. cookcountyil.gov/human-resources/labor-agreements/2020-2025/2020-2025_FOP_OPR_CBA.pdf.